(111 App. Div. 864)

## CONWAY v. COONEY.

(Supreme Court, Appellate Division, Third Department. March 7, 1906.)

1. EXECUTORS AND ADMINISTRATORS—CLAIMS AGAINST ESTATE—FAMILY RELA-
TION—SUPPORT.

A father furnished a furnished house to a married daughter and family,
including rooms in which she conducted a dressmaking business, and
she furnished him with board and nursing. There was nothing to show
that he promised to pay for the board or that she promised to pay for the
use of the house. The arrangement continued for several years, and
she never complained of his failure to pay board. *Held,* that the daugh-
ter could not recover against his estate on a quantum meruit for the
board furnished.

[Ed. Note.—For cases in point, see vol. 22, Cent. Dig. Executors and
Administrators, § 733.]

2. SAME—EXPRESS CONTRACT—EVIDENCE—SUFFICIENCY.

In proceedings by a daughter to establish a claim against the estate
of her deceased father for board furnished him, evidence examined,
and held insufficient to show an express contract on his part to pay
therefor.

3. SAME—PROOF NECESSARY TO ESTABLISH EXPRESS CONTRACT.

Where a father and daughter lived in the same house for several years,
he furnishing the house and she furnishing the board, room, care, etc.,
an express contract on his part to pay for the board must be proved
by clear and convincing proof.

[Ed. Note.—For cases in point, see vol. 22, Cent. Dig. Executors and
Administrators, § 903½.]

Appeal from Judgment of Referee.

Proceedings for the allowance of the claim of Jennie M. Conway
against the estate of Luke Cooney, deceased. From a judgment allow-
ing the claim, Lawrence Cooney, administrator of the estate, appeals.
Reversed.

This is an appeal from a judgment entered upon the report of a referee
appointed under section 2718 of the Code of Civil Procedure. In 1884 the
plaintiff, Jennie Conway, who is a married daughter of the deceased, Luke
Cooney, left her husband's home, and, with her two children, went to live with
and to work for her father at an agreed price, as claimed, of $3 per week.
Her father was then an old man, and was living in his own house without a
wife or other member of his family for him, except a young
daughter about 11 years of age. In December, 1888, that daughter died, and
from and after the next summer this plaintiff, instead of working for her
father, seems to have taken charge of the house, furnished all the means
necessary to run the same, and the father thenceforth boarded and lodged
with her continuously up to the time of his death, which occurred in February,
1902. It appears that in 1901, and while the father was still living, the
plaintiff made out a bill against him for work and labor rendered to him
from 1884 up to that time, but it appears that such bill was never presented
to him. In September, 1903, a bill was presented to the administrator, in
which the plaintiff seeks to recover from his estate for board and lodging
furnished to him from 1889, at the rate of $15 per month, up to December 8,
1901, and from and after that date, at the rate of $10 per week, until his
death. Such bill, so presented, was rejected by the administrator, and was
referred under the statute and tried before the referee to whom so referred.
Such referee reported in favor of the plaintiff in the sum of $1,524.71, and
from the judgment entered thereon this appeal is taken.

Argued before PARKER, P. J., and SMITH, CHESTER, KEL-LOGG, and COCHRANE, JJ.

Abner Robertson (P. C. Dugan, of counsel), for appellant.

J. B. McCormick, for respondent.

PARKER, P. J. It seems that from 1884 to 1889 the plaintiff worked for her father, the deceased Luke Cooney, in his family, under such circumstances as indicated that the services so rendered were not for him, but for the mutual benefit of her own family and that of her said father, and no claim is made by her in this proceeding for any service rendered during that period. In December, 1888, however, it appears that the young daughter of her said father, who had previously lived with him, died, and a young son left him and went away to earn his own living. That left the father the only member of his family, and the plaintiff and her two daughters still living in the house with him. Her family consisted of three, while his had become reduced to one. The referee in his "eighth" finding of fact finds that at that time a new contract was made between the plaintiff and her said father, which went into effect August 1, 1889. What the terms of that contract were he does not find; but he finds that they did thereafter substantially as follows: That from that date the father furnished a furnished house to the plaintiff, her family, and her guests, including rooms to conduct dressmaking in, and a supply of garden truck, reserving a store on the ground floor of the cottage and certain outbuildings in the rear thereof, and that the plaintiff furnished to her said father necessary table board, room care, including cleaning and heating, necessary washing, mending, and nursing, and that this condition continued up to the time of her father's death, which occurred February 18, 1902, at the age of 82 years. There is a finding that the board, etc., so furnished was worth $5 per week, and that the house, etc., so furnished by the father to the plaintiff, was worth the sum of $125 per year; but there is no fact found indicating that the father ever promised to pay to the plaintiff any sum whatever for the board, etc., so furnished him, nor that the plaintiff ever promised to pay anything whatever for the use of the house, etc., so furnished to her. I discover no finding of any fact in the report, other than as above stated, showing that the father ever became liable to pay for the board, etc., so furnished him.

From the facts so bound I am of the opinion that no inference can be drawn that either party promised to pay to the other any money whatever. What they did do we may assume they agreed to do; but what is there in such facts indicating that the father agreed to pay to his daughter what such board, etc., was fairly worth, or what to indicate that the daughter then agreed to pay or allow to him what the use of the property she so occupied and received was reasonably worth in the market? In my judgment, from such facts it is rather to be inferred that what the daughter received from the father was deemed satisfaction for what she furnished to him, and particularly should this be inferred when we consider that at no time during the 12½ years that this condition continued did the daughter complain against the father for more payment for his board, or never at any time did either of them make any attempt to adjust what such board, etc., was reasonably worth, or what fairly

ought to be charged against the daughter for her use of the house and garden truck that she occupied and enjoyed. So far as the facts found by the referee are concerned, it would seem that after the year 1889, as before, the arrangement with the father was that thy should still live as one family, both contributing as best they could to the general expense of their living. Concededly the daughter was a dressmaker by trade, and could earn more or less that way. Concededly the father was an old man, without work and unable to longer carry on his store, which was then rented for $100 per year, and which seems to have been his sole and only income, save what he could raise in his garden. Each put in all they had. The father, from time to time, paid such money as he could spare towards the common support, and from time to time the daughter wrote to her brothers for assistance, and usually seems to have received it, and never complained that her father did not pay what he had agreed to. I conclude that from the facts found in the referee's report no cause of action arises against the father to pay upon "a quantum meruit" for the board, etc., that he so received, and evidently no direct promise to so pay is to be found therein.

It is claimed by the plaintiff, however, that there is evidence in the case from which a direct promise to pay what the board was fairly worth might have been found by the referee. Such evidence is claimed to have been given by John Conway, the husband of the plaintiff, and by her two daughters, Mamie and Hattie. That of the husband is to the effect that the father told him, soon after the daughter Katie's death, that he thought it would be cheaper for him to board with the plaintiff, and that he would pay her $3 or $3.50 per week. If this is to be of any force, it repels the idea of an agreement to pay what the board was worth, and fixes the price at not more than $3.50 per week. But it falls far short of proving that any agreement for any price was ever made. The daughter Mamie is substantially to the same effect, except that he would pay what the board was worth. The daughter Hattie goes a step farther, and says that she heard the father tell the plaintiff that now Katie was dead it would be cheaper for him to board with her, and that the mother replied that she would run the house and he could board with her. She heard nothing said as to price, nor does she state that anything was said as to how she was to be paid. She heard them say, however, that he would fix up a room for her to carry on the dressmaking business and she could carry it on. I have carefully read the evidence of these witnesses, and I can understand why the referee has not attempted to state the terms of the contract then and there made between the parties. Neither of these witnesses state enough to show any definite agreement made, and from all their evidence we cannot conclude, with any certainty, that the deceased then assumed any obligation to pay any sum for his board, nor to in any way compensate the plaintiff therefor, other than such as she would derive from the use of his house and property in the manner above described.

It must be borne in mind that the conduct of the plaintiff during all these years is utterly inconsistent with the contract sought to be deduced from this evidence. She did not keep any account against her father for the board, etc., now claimed, nor does she seem to have

credited him with anything whatever for the use of the house, etc., received from him. As late as 1901, and while he was still living, she made up a bill against him. But, instead of then claiming that he had, been boarding with her since 1889 and charging for that, she claims that all the time from 1884 down she had been keeping house for him at the rate of $3 per week; thus utterly ignoring any change in the relations made in 1889. So in the bill that she presented to the administrator after her father's death, and which was referred in this proceeding, she claims the contract made in 1889 was for board at the price of $15 per month, thus squarely contradicting the conclusion of the referee that the deceased was to pay what it was reasonably worth, viz., $5 per week. And in such last bill she does not give any credit whatever for the use by her of the house, etc., which concededly she has had, thus again contradicting the supposed contract made in 1889, and upon which the conclusion of the referee seems to be based. Certainly, there is not sufficient evidence to warrant the finding of a contract that adds anything to the obligations which may fairly be implied from the conduct of the parties, merely, and that, as we have already seen, is not sufficient to sustain the claim now made by the plaintiff. As between father and daughter living in the same family, we should not conclude that such a direct contract existed, except upon clear and convincing proof. Matter of Hart v. Tuite, 75 App. Div. 323, 324, 78 N. Y. Supp. 154; Robinson v. Carpenter, 77 App. Div. 520, 79 N. Y. Supp. 283; Van Slooten v. Wheeler, 140 N. Y. 624, 35 N. E. 583.

My conclusion is that the judgment should be reversed on the law and the facts, and a new trial granted, with costs to appellant to abide the event. All concur.