(120 App. Div. 156)

## STAFFORD v. BROWN.

(Supreme Court, Appellate Division, First Department. June 7, 1907.)

1. EXECUTORS—ALLOWANCE OF CLAIMS—EVIDENCE.

Public policy requires that claims against estates should be established by very satisfactory evidence.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 22, Executors and Administrators, § 1872.]

2. SAME.

In an action against an executrix to recover a claim against the estate, evidence examined, and *held* insufficient to establish the claim.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 22, Executors and Administrators, §§ 1872, 1873.]

Appeal from Trial Term, New York County.

Action by Walter J. Stafford against Eugenie H. Brown, executrix of Miles A. Stafford, deceased. From a judgment for plaintiff, and an order denying a new trial, defendant appeals. Reversed, and new trial ordered.

Argued before INGRAHAM, LAUGHLIN, CLARKE, SCOTT, and LAMBERT, JJ.

Ralph Stout, for appellant.

Mark G. Holstein, for respondent.

LAMBERT, J. The plaintiff brings this action to recover from the defendant, as executrix of Miles A. Stafford, deceased, the sum of $10,962.24 for services alleged to have been rendered by the plaintiff to defendant's testator during the period extending from the 15th day of March, 1890, to and including the 17th day of February, 1901, the day of the testator's death. The defendant, answering, denied the material allegations of the complaint, except that she admitted the payment by the testator of the sum of $2,375.32 to the plaintiff, and by way of defense payment and the statute of limitations were pleaded. The case was submitted to the jury, resulting in a verdict for $7,974, and from the judgment entered upon such verdict, and from the order denying a new trial upon the minutes, the defendant appeals to this court.

Defendant's testator was the owner of considerable real property in the city of New York and in the state of New Jersey. The plaintiff was a brother of the testator, and the former claims that he was employed by the latter to manage this property, and particularly to make repairs, and that the testator agreed to pay him $5 per day for services in the country, and $3.50 per day for such work as he should perform in the city. The plaintiff's bill for $13,337.50, on which he admits payments of $2,375.26, takes into consideration every day of the time from the 15th day of March, 1890, to the 17th day of February, 1901, the day of testator's death, with the exception of holidays and Sundays. We have here a continuity of services upon a per diem basis which it will be difficult to parallel, and the verdict of the jury for $7,974 makes it incumbent upon this court to examine the evidence in the light of that public policy estab-

lished by our courts, to determine whether the judgment should stand. "Public policy," the court say, in Van Slooten v. Wheeler, 140 N. Y. 624, 633, 35 N. E. 583, 587, "requires that claims against the estates of the dead should be established by very satisfactory evidence, and the courts should see to it that such estates are fairly protected against unfounded and rapacious raids;" and this rule has been cited and followed in many cases. Matter of Marcellus, 165 N. Y. 70, 76, 58 N. E. 796; Conway v. Cooney, 111 App. Div. 864, 869, 98 N. Y. Supp. 171; Linden v. Thieriot, 105 App. Div. 405, 406, 94 N. Y. Supp. 246; Walbaum v. Heaney, 104 App. Div. 412, 414, 93 N Y. Supp. 640; Matter of Miligan, 112 App. Div. 373, 375, 98 N. Y. Supp. 480.

Reading the testimony in the view of the public policy of the state, we are unable to find that "satisfactory evidence" of the plaintiff's case which is demanded. The testator appears to have been a victim of Bright's disease and to have been confined to his bed for a period of several months before his death. His hands were badly swollen, and he was under the influence of opiates at times, yet the plaintiff introduced in evidence a paper, without name or date, other than the dates of items, alleged to be in the handwriting of the testator, which gives an account in harmony with the plaintiff's claim, and ending with the very day of testator's death. There is no evidence of the purpose for which this sheet was made up. There is no evidence to show that it was intended to be a statement of account between the testator and the plaintiff, no evidence that any one saw him making up this statement, or that he made any inquiries as to dates and amounts of any one, and no evidence that he had books of account within reach; and it is most significant that, while the plaintiff admits in his pleadings that he had been paid $2,375.32, this paper, so accurate in its details of amounts, the number of days, and the rate per day, makes no mention of any payments having been made. It was in evidence that the testator was a methodical business man, of rather an economical turn of mind; yet this paper, produced by the plaintiff in support of his claim, makes no mention of any payments. It does not purport to be a statement of account with any one, and even the evidence in support of the paper being in the handwriting of the testator is very unsatisfactory. It rests upon the opinion of two or three persons who claimed to know his handwriting, who say that it resembles his general writing, and that they believe it to be in his handwriting. Two witnesses called by the defendant, and who had known the testator and were familiar with his handwriting, are quite as strong in the opinion that the paper is not in testator's handwriting, and the paper itself, handed up by counsel, in connection with conceded specimens of his handwriting, indicates clearly that if the testator did in fact prepare this statement, including items down to the very day of his death, he had retained a remarkably steady hand, and had materially modified his style of letters and combinations. For instance, in the conceded handwriting, where the testator uses a capital "D," followed by "E," as in "Dear" or "Dec.," he always uses the capital form of "E," while in the paper under consideration the dates for December are all made, not only with a small "e," but the form for the abbreviation is "Decbr," instead of "Dec.," as in his date lines. The capital

"J's" are likewise distinctly different in the paper and in the conceded specimens, and this is likewise true of the capital "S's."  In fact, making allowances for the difference in a mere itemized account and the free-hand style of letter writing, it is evident to us that the weight of evidence is against holding that this statement is in the handwriting of the testator.  It is difficult to believe that a man confined to his bed with Bright's disease, in the condition described in the evidence, could have written the memorandum at any time within three months of his death; and it would be absurd to say that the testator, preparing this memorandum at any considerable length of time before his death, would have fixed the termination of the items upon the day of his own death, would have given credit for days' work not yet performed, and fix the exact time when the employment was to cease. In fact, the paper seems to us practically without probative force. It is so inherently improbable that this sick man could have prepared this paper without any of his family or attendants having knowledge of the same that, even if the handwriting itself was less in doubt, it would still lack in that element of satisfactory evidence which the law requires in cases of this character.

With this paper out of the consideration, there is no evidence upon which this verdict can be sustained.  While there is evidence from which the conclusion might be drawn that the plaintiff had from time to time performed services for the testator, there is no evidence of the amount of time, or of the value of the services rendered, if we may except the vague testimony of Frederick C. Knowles, who testified that he was a partner of Miles A. Stafford for about five years, ending in 1895, and that the firm employed the plaintiff in making repairs, and that he was paid $5 per day for such work, and that he heard Miles A. Stafford say to the plaintiff that he was to have $3.50 per day for work in the city and $5, with board, at the hotel at Schooley Mountains.  It is a significant fact that Mr. Knowles testifies that he paid his portion of the amount earned by the plaintiff at the hotel during the partnership, which involved five years of the time that plaintiff claims he was employed by the testator, and for which he claims for every working day.  Mr. Knowles gives no intimation of how many days the plaintiff worked for the firm, and from his testimony it is evident that the work was confined to repairs about the hotel, which would hardly have taken months of his time for five years, yet he has recovered upon the theory that he was employed practically every day for eleven years in making repairs upon this hotel and a few pieces of real estate in the city of New York and elsewhere.  It should be borne in mind, likewise, that the testator was, during a considerable portion of this time an active business man, and that he employed a firm of real estate brokers to collect the rents upon his city properties, and that he authorized these brokers at times to pay to the plaintiff an allowance of $25 per month, which the plaintiff accepted, and never made any claim that he was owed large sums of money by his brother.  It is also important to remember that, while the plaintiff made no mention of any other compensation, he occupied two apartments of the testator in the city of New York for which he paid no rent; the rental value being $27 per month.

There is some incidental testimony calculated to show that the plaintiff did some work, and that he was paid at times at the rate of $5 per day; but none of the evidence, apart from the paper which we have discussed, attempted to show any definite time of employment. The only fair inference from the oral evidence is that the plaintiff was only engaged in making repairs upon a few pieces of real estate at various times, and that he was paid for this at the rate of $3.50 to $5 per day, and that in addition to this he had an allowance of $25 per month, with apartments, and there is nothing to show that the $2,-375.32, concededly paid to him, did not cover all of the testator's obligations to him. At least the evidence is so unsatisfactory, so lacking in definiteness, that we are persuaded that it would be contrary to the established policy of the law to permit the judgment to stand.

The judgment and order appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.